**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| RACK & BALLAUER EXCAVATING CO., INC., *et al.* | : | Case No. 1:13-cv-30 |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| CITY OF CINCINNATI, *et al.* | : | |
| Defendants. | : | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 12)**

This civil action is before the Court on Defendants' Motion to Dismiss (Doc. 12) and the parties' responsive memoranda. (Docs. 13, 14). This case arises from Plaintiffs' allegations that Defendants utilized unconstitutional criteria in rejecting Plaintiff RB South's bid proposals on two Metropolitan Sewer District ("MSD") projects. Plaintiffs allege that provisions of the Cincinnati Municipal Code ("CMC") discriminate against them and their employees in violation of the United States and Ohio Constitution, federal and state laws, and Cincinnati's limited authority per agreement with Hamilton County. (Doc. 13 at 1).

### I. FACTS AS ALLEGED BY THE PLAINTIFFS

For purposes of this motion to dismiss, the Court must: (1) view the claims in the light most favorable to Plaintiff; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiff Rack & Ballauer Excavating Co., Inc. ("R&B") is an Ohio corporation which employs many individuals who have years of experience providing services to the City of Cincinnati ("Cincinnati") for the installation of complex water and sewer piping projects. (Doc. 13 at 2). Plaintiff RB South, Inc., ("RB South") is a Kentucky corporation, licensed to do business in Ohio, which employs many individuals who have years of experience working on public-improvement projects and providing services to Cincinnati for the installation of complex water and sewer piping projects. (*Id.*)

Randy Rack is Vice President of R&B and a citizen of the State of Indiana. R&B and RB South employ out-of-state workers who are allegedly negatively impacted by Cincinnati's residency requirements and who are allegedly being denied the opportunity to perform work by virtue of, *inter alia*, R&B and RB South's inability to bid on projects pursuant to Cincinnati's allegedly unlawful and unconstitutional ordinances. (*Id.* at 2-3).

Defendant Cincinnati is a municipal corporation located in Hamilton County, Ohio, and which is organized and existing under the law of the State of Ohio. (*Id.* at 3). The MSD is a legal entity existing under the law of the State of Ohio, but controlled by Cincinnati. (*Id.*) At all times herein Cincinnati, by and through its County Commissioners, managed, administered, and operated MSD pursuant to an MSD-City contract. (*Id.*)

Defendant(s) ABC Inc.(s) 1-5 are unknown corporations or entities that submitted bids for the Ardmore Avenue Sewer Replacement Project (the "Ardmore Project") and the Dellers Glen Pump Station Elimination Project (the "Dellers Glen Project") are the second

2

lowest bidders on the Projects, and were awarded or will be awarded the Projects based upon allegedly unlawful and unconstitutional policies, procedures, Ordinances, and Municipal Codes. (*Id.*)

RB South submitted two bids on public waterworks projects that are at issue herein, the Ardmore Project and the Dellers Glen Project. (*Id.*) Both RB South and R&B intend to bid on future public projects on which Cincinnati is an owner or on which City, County, State and Federal funds are expended and to which Cincinnati applies its Apprenticeship Requirement, Pre-Apprenticeship Training Fund, Local Hiring and Disadvantaged Worker Requirements, along with other allegedly unlawful procurement practices and policies, the constitutionality of which RB South and R&B are challenging in this litigation. (*Id.* at 3-4).

In light of Cincinnati's Municipal Codes and Policies and Procedures, Plaintiffs allegedly cannot compete on an equal footing in the bidding process although they are able and ready to bid on contracts but for Cincinnati's discriminatory policies that prevent them from doing so on an equal basis. (*Id.* at 4).

Cincinnati's allegedly unconstitutional laws and practices include, but are not limited to:

(a) CMC 320 requiring bidders to pay ten cents per hour per worker into a Pre-Apprenticeship program and other provisions;

(b) CMC 320-5(b) requiring bidders to employ apprentices at a ratio of at least 20%;

(c) CMC 318;

3

    (d)        Cincinnati's failure to allow for bid protests and procedures;

    (e)        Cincinnati's unlimited discretion with respect to its award of public improvement contracts that are financed by City, State, and Federal funds; and

    (f)        Cincinnati's exceeding of CMC 321-37(d)'s $75,000 or 15% cap for Total Preference Percentages Permissible. (*Id.*)

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

4

Accordingly, in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. Rule Civ. Proc. 8(a)(2)).

Courts may take into account matters of public record when considering a motion to dismiss. *Wyser-Pratte Management Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 6600 (6th Cir. 2008). Therefore, reference to public records and the Plaintiffs' bid documents does not convert this motion into a motion for summary judgment. *Bolan Textile (HK), Ltd. v. DeHaan*, 2013 U.S. Dist. LEXIS 36918 (S.D. Ohio Mar. 18, 2013).

### III. ANALYSIS

The doctrine of standing requires that a party seeking to invoke a federal court's jurisdiction demonstrate:

> (1) an injury in fact, meaning an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct... and (g) it must be likely, as opposed to merely speculative that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-561 (1992) (internal citations and

quotations omitted). Additionally, for review to be appropriate under the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiffs must demonstrate actual present injury or a "very significant possibility of future harm." *Bras v. California Pub. Utilities Comm'n.*, 59 F.3d 869, 873 (9th Cir. 1995), cert. denied, 516 U.S. 1084 (1996).

### A.     Chapter 318

Chapter 318 was suspended in its entirety prior to the solicitation of the bids at issue, was not in effect at the time the bids at issue were solicited and reviewed, and remains suspended. (Doc. 2 at ¶ 37; Doc. 12-1). To date, Chapter 318 has been officially suspended a total of four times. (Docs. 12-2, 12-3, and 12-4). The bid documents make clear that the local hiring guidelines from Chapter 318 were not applicable to these projects. Currently, Chapter 318 is the subject of four different potential revisions. (Docs. 12-5, 12-6, 12-7, and 12-8). There is a significant possibility that the language and applicability of the ordinance will change. Consequently, Plaintiffs are also unable to allege a "very significant possibility of future harm" as it is impossible to predict how Chapter 318 will apply or what its terms will be in the future. *Bras*, 59 F.3d at 873. It thus cannot be said that any possible injury to Plaintiffs is "imminent" and any future harm that Plaintiffs allege is purely speculative at this time. Because Plaintiffs' alleged injury is purely conjectural and hypothetical rather than actual or imminent, Plaintiffs lack standing to bring this claim.

Plaintiffs allege that they have standing pursuant to *Northeastern Fla. Chapter of Associated. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656 (1993).

However, in *Jacksonville*, the Court held that defendants should not be permitted to render a case moot by repealing the statute at issue "and replacing it with one that differs only in some insignificant respect." 508 U.S. at 662. In *Jacksonville*, the defendants had repealed the law at issue during the lawsuit and then enacted a new ordinance which had the same "fundamental" effect on the plaintiffs. *Id*. In this case, Defendants have not repealed the ordinance at issue to escape a lawsuit only to replace it with one having the same "fundamental" effect. The ordinance at issue here was only briefly in effect and was not in effect at the time bids were accepted on either of the contracts at issue or at the time this lawsuit was filed. The ordinance has been continuously suspended in order to gather information for potential changes, and it is uncertain how the language and impact of the ordinance may change in the near future. This case is distinguishable from *Jacksonville* because the ordinance was not in effect at the time RB South bid, is not currently in effect, and remains in a state of uncertainty and flux. Thus, unlike in *Jacksonville*, Plaintiffs are unable to allege any actual or imminent harm due to Chapter 318.

### B. Chapter 320

In its submitted bid proposals for the two contracts at issue in this case, RB South explicitly indicated that it was an exempt entity under Chapter 320. CMC 320-5 and 320-7 include requirements for bidders and contractors respectively. Both are defined terms under Chapter 320. CMC 320-1-B1; CMC 320-1-C2. To be deemed either a "bidder" or "contractor" under Chapter 320, an entity must have posted over $350,000 in gross revenues over any of the three preceding tax years. *Id*. RB South indicated in its

7

bid proposal that it had only been in existence for "2 mos." and therefore that it was an exempt entity not required to comply with Chapter 320 as it existed at the time. (Doc. 14-5; Doc. 14-6). Therefore, by the plain terms of the ordinance, RB South was not a "bidder" or "contractor" as those terms are defined in Chapter 320. Because Chapter 320 was not applicable to RB South's bid, it suffered no actual harm. Similarly, Plaintiffs R&B and Randy Rack also cannot allege actual harm, as neither submitted bids on either of the projects at issue and neither alleges that the requirements of Chapter 320 kept them from bidding.

Plaintiffs' allegations of a significant possibility of future harm under Chapter 320 are also not compelling. Recent revisions to Chapter 320 have had sweeping effect, and each of the primary offending ordinances that Plaintiffs have singled out in their various filings (CMC 320-3(j) & (k), 320-5(b), and 320-7) have been revised by Ordinance 114-2013. (Doc. 14-2). The enacted revisions to Chapter 320 render Plaintiffs' allegations of prospective harm moot. Revised CMC 320-5 removes the requirement that the bidder employ one apprentice for every four journeypersons. (*Id.*) The revised requirement that the bidder participate in an apprenticeship program is not applicable to registered small business enterprises for contracts under $250,000. (*Id.*) Finally, CMC 320-3(j) and (k) have both been revised to require bidders to certify whether, and not *that*, they provide a health care plan and a retirement program, respectively. (*Id.*) Plaintiffs cannot maintain their present allegation of a significant certainty of future harm from ordinances that have since been materially amended.

8

### C. Due Process

R.C. 9.312, the statute that Plaintiffs allege is violated by Cincinnati's failure to provide for a bid-protest procedure and not-responsible/nonresponsive notification in writing by certified mail (or first class mail when awarded under R.C. 125.11), is a permissive statute. (Doc. 7 at 11). The statute provides that a "municipal corporation" or a "board of county commissioners" (among other political subdivisions) *may* adopt a policy requiring contracts be awarded to the lowest responsive and responsible bidder. R.C. 9.312(C). When a city or county adopts such a policy, it is subject to the requirements of the rest of R.C. 9.312, including the bid-protest procedure and written notification requirements. No evidence has been presented showing that either Cincinnati or Hamilton County has adopted such a policy, and, in fact, CMC 321-43 provides that bids may be rejected for any reason or for no reason, if the bid is not in the best interests of the city.

To demonstrate a due process violation, Plaintiffs must have a protected property interest in the publicly-bid contract, which can be demonstrated in one of two ways: "a bidder can either show that it actually was awarded the contract and then deprived of it, or that, under state law, the county had limited discretion, which it abused, in awarding the contract." *Enertech Elec. v. Mahoning Cty. Commrs.*, 85 F.2d 257, 260 (6th Cir. 1996) (citing *United of Omaha Life Insurance Co. v. Solomon*, 960 F.2d 31, 34 (6th Cir. 1992) and *Peterson Enterprises, Inc. v. Ohio Department of Mental Retardation and Developmental Disabilities*, 890 F. 2d 416 (6th Cir. 1989)); *see also Ohio Asphalt Paving,*

9

*Inc. v. Board of Commissioners of Coshocton County, Ohio*, 2005 U.S. Dist. LEXIS 12033, at *9-10 (S.D. Ohio, June 17, 2005); *Cleveland Constr., Inc. v. City of Cincinnati*,118 Ohio St. 3d 283, 284-85 (2008).

In *Cleveland Construction*, because the plaintiffs were "never actually awarded the contract and then deprived of it," the Court focused on whether or not the City had abused its discretion when awarding the contract. 118 Ohio St. 3d at 286. The Court recognized and upheld the City's "broad discretion to grant or deny contracts" under CMC 321-43 and the right of the City to "reject any and all bids…" *Id*. The Court emphasized the City "is not required to award a contract at all if it is dissatisfied with any of the submitted bids." *Id*. Due to this broad discretion, the Court upheld the City's decision to deny the bid at issue. *Id*. at 287.

Because Plaintiffs in this case were "never actually awarded the contract[s] and then deprived of [them]," as in *Cleveland Construction*, the Plaintiffs have a property interest only if the City had no discretion to reject their bid or the City had such limited discretion that failing to award the contract to Plaintiffs amounts to an abuse of discretion. *Id.* at 286. As in *Cleveland Construction*, the City has the ability to reject "any and all bids," including the lowest and best bid if that bid is not in the best interests of the City. CMC 321-43. Under this provision, the City had broad discretion to reject any and all bids, and pursuant to *Cleveland Construction* the City did not abuse its discretion when it decided not to award the contracts at issue to the Plaintiffs. Therefore, Plaintiffs cannot assert a property interest in the contracts, and without a property interest there is no due process violation.

Furthermore, the Sixth Circuit has recognized that disappointed bidders have access to due process through the ordinary judicial process in Ohio. *Trihealth Inc. v. Bd. of Comm'rs,* 430 F.3d 783, 794 (6th Cir. 2005).

## IV. CONCLUSION

Accordingly, based on the foregoing, Defendants' Motion to Dismiss (Doc. 12) is **GRANTED**, Plaintiffs' claims are hereby **DISMISSED**, and this case is **CLOSED**.

**IT IS SO ORDERED.**

Date: July 1, 2013   *___s/ Timothy S. Black_ _*
　　　　　　　　　　　　　　　　　　　　　Timothy S. Black
　　　　　　　　　　　　　　　　　　　　　United States District Judge